# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY EVANS,                          :
    Petitioner            :          CIVIL ACTION NO. 3:14-CV-2333
                          :          (Judge Nealon)
    v.                    :
                          :
YORK COUNTY DEPARTMENT     :
OF PROBATION AND PAROLE,   :
<u>ET</u> <u>AL.</u>,[1]                  :
    Respondents           :

## MEMORANDUM

On December 8, 2014, Petitioner, Gary Evans, an individual currently on probation, initiated the above-captioned action by filing a counseled petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Along with his petition, Petitioner filed a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, which was granted on March 4, 2015. (Docs. 2, 6). On February 17, 2015, this Court issued an Order

---

[1] Although the proper respondent in a habeas action is the warden of the facility where the prisoner is being held, <u>see</u> <u>Rumsfeld v. Padilla</u>, 542 U.S. 426 (2004), the Advisory Committee Notes accompanying Rule 2 Governing § 2254 Cases indicate that where the "applicant is on probation or parole due to the state judgment he is attacking," as is the case here, the:

> named respondents shall be the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole and probation agency, or the state correctional agency, as appropriate.

Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

allowing Petitioner to withdraw his petition without prejudice to filing another section 2254 petition raising all grounds for relief from his conviction. (Doc. 5). On April 3, 2015, by filing an amended counseled petition, Petitioner elected to withdraw his initial petition in order to file an all-inclusive petition under section 2254. (Doc. 7). Petitioner challenges his sentence by arguing that he received ineffective assistance of counsel during his trial and appeal of a PCRA petition. (Id. at pp. 6-11). For relief, Petitioner seeks a new trial. (Id. at p. 16). On May 4, 2015, Respondent filed a motion to dismiss the petition as untimely. (Doc. 9). On July 14, 2015, an Order was issued, excusing Respondent's failure to comply with Local Rule 7.5[2] because the grounds for their requested relief were set forth in the body of its motion. (Doc. 11). That Order also granted Petitioner leave to file a brief in opposition to Respondent's motion on or before July 28, 2015. (Id.). Petitioner filed his brief in opposition on July 28, 2015. (Doc. 12). Respondent has not filed a reply to Petitioner's brief in opposition, and the deadline for such a filing has passed. See M.D. Pa. L.R. 7.7. As a result, Respondent's motion to dismiss the petition as untimely is ripe for disposition. For the reasons set forth

_____

[2] Local Rule 7.5 states in relevant part that: "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion . . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." M.D. Pa. L.R. 7.5.

below, Respondent's motion will be granted, and the petition will be dismissed as untimely.

## I. BACKGROUND AND PROCEDURAL HISTORY

On September 18, 2006, a criminal information was filed against Petitioner, which charged him with indecent assault of a person less than thirteen (13) years of age, 18 Pa.C.S.A. § 3126(a)(7); indecent assault of a person less than sixteen (16) years of age, 18 Pa.C.S.A. § 3126(a)(8); indecent assault without complaintant's consent, 18 Pa.C.S.A. § 3126(a)(1); corruption of minors, 18 Pa.C.S.A. § 6301(a)(1); and unlawful contact with a minor, 18 Pa.C.S.A. § 6318(a)(1). Commonwealth v. Evans, CP-67-CR-5087-2006 (filed Sept. 18, 2006).[3] On December 19, 2006, after a jury trial, Petitioner was convicted of all counts. Id. On February 28, 2007, Petitioner was sentenced to eleven and a half (11 ½) to twenty-three (23) months incarceration and five (5) years probation. Id.

On March 9, 2007, Petitioner filed a post sentence motion and a Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, ("PCRA") petition. Id. On April 11, 2007, Petitioner filed an amended motion and PCRA petition. Id. On

_____

[3] A court may take judicial notice of the contents of another court's docket. See Orabi v. Att'y Gen. of the United States, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (citing Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Porter v. Ollison, 620 F.3d 952, 954-55 (9th Cir. 2010); Singh v. U.S. Dep't of Homeland Sec., 526 F.3d 72, 80 n.9 (2d Cir. 2008)).

June 20, 2007, Petitioner's amended motion and amended PCRA petition were denied. <u>Commonwealth v. Evans</u>, CP-67-CR-5087-2006. Petitioner did not appeal either ruling. <u>Id.</u>

On April 30, 2008, Petitioner filed a second PCRA petition. <u>Id.</u> On March 9, 2009, it was granted in part and denied in part. <u>Id.</u> In particular, the PCRA court granted Petitioner leave to file a <u>nunc pro tunc</u> direct appeal of his conviction and sentence, but denied his request for relief in the form of leave to file a <u>nunc pro tunc</u> appeal from the court's decision to deny Petitioner's first PCRA petition. <u>Id.</u>

On March 24, 2009, Petitioner filed two timely notices of appeal. <u>Id.</u> One addressed the judgment of sentence, while the other addressed the trial court's March 9, 2009, order denying his request to reinstate his right to appeal <u>nunc pro tunc</u> from the dismissal of his initial PCRA petition. <u>Id.</u>; (Doc. 7, p. 50).

On May 24, 2011, the Pennsylvania Superior Court affirmed Petitioner's convictions, but found, <u>inter alia</u>, that "[t]he court's imposition of separate, consecutive sentences under subsections (a)(7) and (8) constitutes an illegal sentence which we must vacate," and thus, remanded the matter for re-sentencing. <u>Commonwealth v. Evans</u>, CP-67-CR-5087-2006; (Doc. 7, p. 67). Additionally, the court addressed whether it could also decide Petitioner's request to reverse the

4

dismissal of his 2007 PCRA petition and remand for reinstatement of his right to file an appeal <u>nunc pro tunc</u> from the dismissal of his initial PCRA petition. (Doc. 7, p. 66). The court found that since Petitioner's appellate rights were reinstated <u>nunc pro tunc</u> it could not review his collateral claims. (<u>Id.</u> at p. 67). According to the Pennsylvania Superior Court, Petitioner was "limited to a direct appeal of his judgment of sentence." (<u>Id.</u>). The court also noted that "any subsequent PCRA petition [Petitioner] files will be considered a first PCRA petition for timeliness purposes." (<u>Id.</u>). "Therefore," the court concluded, "once [Petitioner's] original judgment of sentence becomes final, [he] will be able to pursue a timely petition for collateral relief under the PCRA." (<u>Id.</u>).

On June 1, 2012, Petitioner was re-sentenced to five (5) years probation. <u>Commonwealth v. Evans</u>, CP-67-CR-5087-2006. On July 1, 2012, Petitioner's sentence became final. <u>Id.</u> On June 28, 2013, Petitioner filed a PCRA petition. <u>Id.</u> On October 2, 2013, Petitioner's PCRA petition was denied. <u>Id.</u> On October 31, 2013, Petitioner appealed that ruling to the Pennsylvania Superior Court. <u>Id.</u> On July 1, 2014, the Superior Court affirmed the denial of Petitioner's PCRA petition. <u>Id.</u> On July 31, 2014, Petitioner moved for allowance of appeal to the Supreme Court of Pennsylvania. <u>Id.</u> On November 19, 2014, Petitioner's allowance of appeal was denied. <u>Id.</u>

On December 8, 2014, Petitioner filed a counseled petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). On February 17, 2015, this Court issued an Order granting Petitioner leave to withdraw his initial petition and file a section 2254 petition raising all grounds for relief from his conviction. (Doc. 5). On April 3, 2015, Petitioner elected to withdraw his initial petition by filing an all inclusive amended counseled section 2254 petition. (Doc. 7).

Petitioner raises three (3) grounds for relief in his amended petition. See (Id.). First, he claims that he received ineffective assistance of counsel at trial when his attorney failed to call two eye witnesses "that would directly refute [the] accuser's story." (Id. at p. 6). Second, Petitioner asserts that he is entitled to relief because he received ineffective assistance at trial when his trial counsel failed to "call character witnesses . . . , which would have been a solid defense to sex allegations." (Id. at p. 8). According to Petitioner, when his trial counsel "attempted to present such witnesses, he failed to lay a proper foundation leading to their exclusion at trial." (Id. at p. 7). Third, Petitioner claims that he received ineffective assistance during his first PCRA petition because his counsel, Attorney Jay Kalasnik, failed to appeal the denial of that petition and did not adequately "consult with [him] about [such] an appeal." (Id. at pp. 9, 14). Specifically, Petitioner alleges that Attorney Kalasnik failed to "properly advise him of [his]

direct appeal rights" and "failed to properly advise [him] of [his] right to file an appeal from the denial of his first PCRA." (Doc. 7, p. 9). Petitioner claims that he told Attorney Kalasnik to appeal, "which he did not do." (Id.). Petitioner also states that Attorney Kalasnik "denies that I told him not to appeal, but instead says that he asked me if I wanted to appeal" and "told him I was not sure." (Id.). Petitioner states that Attorney Kalasnik contends that he sent a "single follow up letter and then did not hear back from" Petitioner. (Id.). "However," Petitioner claims, Attorney Kalasnik "had an obligation to discover my wishes before the deadline expired. Even under his version of the facts, he was ineffective." (Id.).

Petitioner also concedes that his amended petition presently before this Court was untimely filed because his current counsel misadvised him about the filing deadline. (Id. at pp. 14-15). According to Petitioner, his "judgement became final July 2, 2012, (30 days after my re-sentencing when the appeal deadline expired)." (Id. at p. 14). Petitioner states that he filed a PCRA petition three hundred and sixty (360) days later "on June 28, 2013." (Id.). On October 2, 2013, Petitioner's PCRA petition was denied. Commonwealth v. Evans, CP-67-CR-5087-2006. On October 31, 2013, Petitioner appealed that ruling to the Pennsylvania Superior Court. Id. On July 1, 2014, the Superior Court affirmed the denial of Petitioner's PCRA petition. Id. On July 31, 2014, Petitioner moved

for allowance of appeal to the Supreme Court of Pennsylvania. <u>Commonwealth v.</u>

<u>Evans</u>, CP-67-CR-5087-2006. On November 19, 2014, Petitioner's allowance of

appeal was denied. <u>Id.</u> Petitioner states that "[he] realize[s] now that [he] had to

file within [five] 5 days" of November 20, 2014. (Doc. 7, p. 14). "However,"

Petitioner contends that his "attorney and the attorney signing this Petition

misadvised [him], thinking [he] had a year from the denial of [his] PCRA." (<u>Id.</u>).

Petitioner claims that his current counsel "realized this last week and told [him]

this morning that [he is] now [fourteen] 14 days late." (<u>Id.</u>). Petitioner argues that

his untimely amended petition should be excused because, <u>inter alia</u>, he is actually

innocent. (<u>Id.</u> at p. 15).

On May 4, 2015, Respondent's filed a motion to dismiss the petition as

untimely. (Doc. 9). Respondent contends that, based on the procedural history of

this matter, "Petitioner's Federal Habeas 'clock' ran from July 1, 2012 through

June 28, 2013; the time from when Petitioner's sentence became final until the

PCRA Petition was filed." (<u>Id.</u> at p. 4). Respondent asserts that "363 days passed

before statutory tolling occurred." (<u>Id.</u>). Respondent claims that "Petitioner's

time to file a Federal Habeas Petition began to run on November 20, 2014," after

his PCRA litigation became final. (<u>Id.</u>). According to Respondent, "[s]ince 363

days had already run, Petitioner had 2 days from November 20, 2014 to file a

timely Federal Habeas Petition." (Doc. 9, p. 4). "Therefore," Respondent argues, "Petitioner had until on or about November 22, 2014 to file a timely Federal Habeas Petition." (Id.). As noted above, the instant petition was filed on December 8, 2014. (Id.). As a result, Respondent concludes, "[t]he instant petition for Habeas Corpus, filed on December 8, 2014, is untimely by 17 days in violation of" section 2244 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and thus, should be dismissed as untimely. (Id. at pp. 4-5).

On July 28, 2015, Petitioner filed a brief in opposition to Respondent's motion to dismiss as untimely. (Doc. 12). While Petitioner does not dispute that the instant petition was filed after the expiration of the AEDPA's one-year statute of limitations, he first contends that he qualifies for equitable tolling due to his attorney's erroneous legal advice regarding the deadline to file that petition. (Id. at pp. 5-8); see (Doc. 7, pp. 14-15). Petitioner also argues that the untimeliness of his petition should be excused under McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), because he is asserting actual innocence. (Doc. 12, p. 9). In support of this claim, Petitioner points to the results of four (4) polygraph examinations and his "merits arguments," which "make it more likely than not that no reasonable juror would convict him." (Id.). Therefore, according to Petitioner, the untimeliness of the instant petition should be excused. (Id. at pp. 5-9). Attached

to the brief in opposition is a declaration of counsel, which asserts that he

misadvised Petitioner about the deadline to file the habeas petition at issue. (Doc.

12, pp. 33-36).

## II.  DISCUSSION

"A person confined under a state-court judgment has one year to file a 2254

petition challenging judgment." Smith v. Cameron, 2015 U.S. Dist. LEXIS 68085,

at *2-3 (M.D. Pa. May 27, 2015) (Caldwell, J.) (citing 28 U.S.C. § 2244(d)(1)).[4]

The AEDPA's limitations period runs from the "date on which the judgment

---

[4] Section 2244(d) states:

(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

"The one-year federal limitations period is subject to both statutory and equitable tolling."  Smith, 2015 U.S. Dist. LEXIS 68085, at *3.  "Statutory tolling for a federal habeas corpus claim occurs during the time 'a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . .'"  Id. (quoting Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); 28 U.S.C. § 2244(d)(2)).  But see Stokes v. Dist. Att'y of the Cnty. of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001) ("the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one-year statute of limitations under 28 U.S.C. § 2244(d)(2).");  Mosley v. Walsh, 2015 U.S. Dist. LEXIS 84454, at *4 (M.D. Pa. Jun. 30, 2015) (Jones, J.) (citing Stokes, 247 F.3d at 542).

"Equitable tolling can occur in several circumstances."  Smith, 2015 U.S. Dist. LEXIS 68085, at *3 (citing Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88-91 (3d Cir. 2013); Urcinoli v. Cathel, 546 F.3d 269, 273 (3d Cir. 2008); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)).  Specifically, the "limitations period may be subject to equitable tolling when the petitioner shows

that he 'has been pursuing his rights diligently,' and yet 'some extraordinary circumstances stood in his way and prevented timely filing.'" Smith, 2015 U.S. Dist. LEXIS 68085, at *3 (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)); see Ross v. Varano, 712 F.3d 784, 798 (3d Cir. 2013) (burden is on the petitioner to establish equitable tolling). "The determination is made on a case-by-case basis." Smith, 2015 U.S. Dist. LEXIS 68085, at *3 (citing Ross, 712 F.3d at 799). Extraordinary circumstances have also been found when: "(1) the state has actively misled the petitioner; (2) the petitioner has in some extraordinary way been prevented from asserting his rights; or (3) the petitioner has timely asserted his rights but in a wrong forum." LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (citing Urcinoli, 546 F.3d at 272; Jones, 195 F.3d at 159).[5]

### a. **Equitable Tolling Under Holland**[6]

Petitioner in the case sub judice argues that his attorney's miscalculation of the filing deadline should warrant equitable tolling of the statute of limitations.

---

[5] In addition to the circumstances addressed above, the United States Court of Appeals for the Third Circuit has identified additional circumstances in which equitable tolling is warranted, specifically, when the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that he had done everything required of him. Yanes v. Nish, 2009 U.S. Dist. LEXIS 33289, at *7 (M.D. Pa. 2009) (Caldwell, J.) (citing Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)).

[6] Holland v. Florida, 560 U.S. 631 (2010).

(Doc. 12, pp. 6-8).  According to Petitioner, "[t]he habeas statute of limitations is not unbending . . . ."  (Id. at p. 6) (quoting Holland, 560 U.S. at 645).  Citing to Holland, Petitioner contends that "attorney error can rise to the level of 'extraordinary' that justifies tolling for a diligent petitioner."  (Id.).  He also argues that the United States Court of Appeals for the Third Circuit "has likewise recognized that an attorney's inadequate advice can thwart a diligent petitioner's attempts as well."  (Id.) (citing Ross, 712 F.3d at 799).  According to Petitioner, he "is more than diligent."  (Id. at p. 7).  Specifically, he has "brought the evidence of his innocence to light in his initial PCRA petition and has been trying to use the evidence since."  (Id.).  Furthermore, Petitioner asserts that he has "litigated two [(2)] appeals to the Superior Court, two [(2)] petitions to the Pennsylvania Supreme Court, and three [(3)] PCRA petitions."  (Id. at p. 8) (emphasis in original).  Petitioner contends that "[t]o say that [he] has vigorously pursue[d] his rights would be an understatement."  (Id.).  Petitioner concludes that "[u]nder Holland, the statute of limitations must yield in this case to protect a diligent petitioner from harm due to the error of [his] counsel."  (Id.).

In Johnson v. Hendricks, 314 F.3d 159 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit addressed whether "a miscalculation of the statute of limitations by petitioner's attorney [is] grounds for equitable tolling of

the statute of limitations provided in 28 U.S.C. § 2244(d)(1)." Johnson, 314 F.3d at 161. The Third Circuit stated that "the one year filing deadline in [section 2244(d)(1)] is subject to equitable tolling." Id. at 162 (citing Fahy, 240 F.3d at 244; Miller v. N.J. Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998)). However, the Third Circuit noted that "'equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair.'" Id. (quoting Nara, 264 F.3d at 319). The Third Circuit went on to state that "[e]quitable tolling is permitted if '(1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum.'" Id. (quoting Fahy, 240 F.3d at 244). In concluding that the petitioner did not show extraordinary circumstances to warrant equitable tolling of the AEDPA statute of limitations, the Third Circuit stated that "in non-capital cases, attorney error has not been found to rise to the extraordinary circumstances required for equitable tolling." Id. at 163 (citing Fahy, 240 F.3d at 224). Specifically, the Third Circuit held that "[a]lthough [plaintiff] received erroneous advice, [he] was not prevented in an extraordinary way from asserting his rights." Id.

    In Holland v. Florida, 560 U.S. 631 (2010), the United States Supreme

14

Court addressed, for the first time, whether AEDPA's statutory limitations period may be equitably tolled. Holland, 560 U.S. at 645 (citing Lawrence, 549 U.S. at 336; Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005)). The Court determined that "[n]ow, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases." Id. (citations omitted). "The limitations period may be subject to equitable tolling when the petitioner shows that he 'has been pursuing his rights diligently,' and yet 'some extraordinary circumstances stood in his way and prevented timely filing.'" Garcia v. Gilmore, 2015 U.S. Dist. LEXIS 101514, at *4 (M.D. Pa. Aug. 4, 2015) (Caldwell, J.) (quoting Holland, 560 U.S. at 649). "The diligence required for equitable tolling is reasonable diligence, not maximum, extreme or exceptional diligence." Id. at *4-5 (citing Holland, 560 U.S. at 653). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." LaCava, 398 F.3d at 277 (citing Jones v. Morton, 195 F.3d 153, 160 (3d Cir. 1999)). In regards to extraordinary circumstances that qualify for equitable tolling for a diligent petitioner, the United States Supreme Court went on to hold that "[o]ne potentially extraordinary circumstance is where a [petitioner] is 'effectively abandoned' by his attorney." Jenkins, 705 F.3d at 89 (quoting

Holland, 130 S. Ct. at 2564).  However:

> On the other hand, "garden variety claim[s] of excusable
> neglect," Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549,
> 2564, 177 L. Ed. 2d 130 (2010) (quoting Irwin v. Dep't of
> Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed.
> 2d 435 (1990)), such as "attorney error, miscalculation,
> inadequate research, or other mistakes have not been found to
> rise to the 'extraordinary' circumstances required for equitable
> tolling[,]" LaCava, 398 F.3d at 276 (quoting Merritt[ v.
> Blaine], 326 F.3d [157,] 169 [(3d Cir. 2003)]).

Jenkins, 705 F.3d at 89 n.16.

In Santiago v. Pennsylvania Board of Probation and Parole, 2015 U.S. Dist.
LEXIS 69655 (M.D. Pa. May 29, 2015) (Kosik, J.), the petitioner argued that the
statute of limitations as to his untimely filed petitioner for writ of habeas corpus
should be equitably tolled because his counsel "misadvised him about the filing
deadline." Id. at *1.  The district court determined that the fact that the
petitioner's attorney was mistaken as to the filling deadline "does not rise to the
level of 'extraordinary circumstances' to warrant equitable tolling." Id. at *4.  As
a result, the court dismissed the petition because the petitioner "failed to meet his
burden of demonstrating extraordinary circumstances sufficient to warrant
equitable tolling . . . ." Id. at *5; see also Barnes v. Harlow, 2015 U.S. Dist.
LEXIS 54406, at *7-10 (M.D. Pa. Apr. 27, 2015) (Jones, J.) (The petitioner's
reliance on his counsel's alleged erroneous advice is insufficient to trigger

equitable tolling).

Based on the foregoing, even if it is assumed that Petitioner has been reasonably diligent in pursuing his claims, the fact that Petitioner's attorney was merely mistaken as to the filing deadline does not rise to the level of extraordinary circumstances to warrant equitable tolling under Holland.[7] Therefore, Petitioner has failed to satisfy his burden of demonstrating that he is entitled to equitable tolling of the AEDPA's statute of limitations under Holland.

### b.    Equitable Tolling Under McQuiggin[8]

The Supreme Court of the United States identified another equitable exception to the AEDPA's limitations period in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), which is referred to as the "miscarriage of justice" exception. See, e.g., Burton v. Horn, 2015 U.S. App. LEXIS 9578, at *4 (3d Cir. Jun. 9, 2015). "In McQuiggin, the Supreme Court held that a convincing claim of actual

---

[7]    Additionally, the nearly twelve (12) month delay in filing his PCRA petition after his sentence became final on July 1, 2012, weighs in favor of a finding that he was not reasonably diligent in pursuing his claims. See Mosley v. Walsh, 2015 U.S. Dist. LEXIS 84454, at *7 (M.D. Pa. Jun. 30, 2015) (Jones, J.) (The petitioner's two hundred and seventeen (217) "day delay in filing his PCRA petition does not demonstrate reasonable diligence."); Sease v. Wenerowicz, 2015 U.S. Dist. LEXIS 76781, at *8 (M.D. Pa. Jun. 15, 2015) (Jones, J.) (Eight (8) month delay between "quashing of his direct appeal as untimely and the filing of PCRA petition" "does not demonstrate reasonable diligence.").

[8] McQuiggin v. Perkins, 133 S. Ct. 1924 (2013).

innocence overcomes the bar of the statute of limitations."  Smith, 2015 U.S. Dist. LEXIS 68085, at *4 (citing McQuiggin, 133 S. Ct. at 1928).  "This 'miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner.'"  Burton, 2015 U.S. App. LEXIS 9578, at *5 n.8 (quoting McQuiggin, 133 S. Ct. at 1933).  In other words, this exception "may only be used where a petitioner demonstrates 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  King v. Tritt, 2014 U.S. Dist. LEXIS 88393, at *10 (M.D. Pa. 2014) (Munley, J.) (citing McQuiggin, 133 S. Ct. at 1935).

Therefore, "actual innocence, if proved, serves as a gateway through which a petitioner may pass when faced with procedural impediments such as the expiration of the statute of limitations."  Vidmosko v. Glunt, 2015 U.S. Dist. LEXIS 61771, at *10 (M.D. Pa. May 12, 2015) (Conner, J.) (citing McQuiggin, 133 S. Ct. at 1928).  The Supreme Court:

> emphasized, however, the demanding nature of the test for permitting the gateway to open: "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"

Vidmosko, 2015 U.S. Dist. LEXIS 61771, at *10 (quoting McQuiggin, 133 S. Ct. at 1936). For this exception to apply:

> a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."

Id. (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). "[A]ctual innocence claims focus on 'new' evidence–'relevant evidence that was either excluded or unavailable at trial.'" Id. at *11 (quoting Schlup, 513 U.S. at 327-28). Evidence is not "new" if it was available at trial and defense counsel chose not to present it. Teagle v. DiGuglielmo, 336 F. App'x 209, 213 (3d Cir. 2009) (citing Goldblum v. Klem, 510 F.3d 204, 226 n.14 (3d Cir. 2007)).

"The purpose of the miscarriage of justice exception is to 'balance societal interests in the finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case.'" King, 2014 U.S. Dist. LEXIS 88393, at *10-11 (quoting Schlup, 513 U.S. at 324). "The exception is narrow, and applies only where the defendant is 'actually innocent' of the charges. An example of evidence that establishes actual innocence is a credible confession to the crime by another person." Id. at *11 (citing Sawyer v. Whitley, 505 U.S. 333, 340-41 (1992)). "The limited nature of this exception is

underscored by the Court's explicit observation that 'tenable actual-innocence gateway pleas are rare.'" <u>Vidmosko</u>, 2015 U.S. Dist. LEXIS 61771, at *10-11 (quoting <u>McQuiggin</u>, 133 S. Ct. at 1928); <u>see</u> <u>Teagle</u>, 336 F. App'x at 213 ("The Supreme Court has emphasized that this standard 'is demanding and permits review only in the extraordinary case.'") (quoting <u>House v. Bell</u>, 547 U.S. 518, 538 (2006)); <u>see</u> <u>also</u> <u>Sweger v. Chesney</u>, 294 F.3d 506, 523-24 (3d Cir. 2002) (describing the burden a petitioner must meet to establish actual innocence as "extremely high").

Here, Petitioner argues that the untimeliness of the instant petition should be excused under <u>McQuiggin's</u> miscarriage of justice exception because he is actually innocent. (Doc. 7, p. 15). In support of this claim, Petitioner relies on two categories of evidence: 1) evidence in existence at the time of trial, and 2) evidence generated subsequent to Petitioner's conviction and sentence. (<u>Id.</u> at pp. 15, 96-103, 110-16, 117, 118); (Doc. 12, pp. 9-28). This evidence will be addressed <u>ad</u> <u>seriatum</u>.

### i. Evidence in Existence at Time of Trial

In support of his actual innocence claim, Petitioner relies, in part, on reputation/character and eyewitness evidence that was in existence at the time of his trial. (Doc. 12, pp. 10-23). However, this evidence is not "new" so as to

satisfy the first step of a <u>McQuiggin</u> claim. <u>See</u> <u>Teagle</u>, 336 F. App'x at 213

(noting that evidence was not "new," as it was available at trial and defense

counsel chose not to present it) (citing <u>Goldblum</u>, 510 F.3d at 226 n.14; <u>Myers v.</u>

<u>Pennsylvania</u>, 2014 U.S. Dist. LEXIS 150151, at *17 (M.D. Pa. 2014) (Jones, J.)

("The decision not to call an alleged witness was presumably a reasonable tactical

decision and sound trial strategy. Thus, Petitioner has not presented reliable,

newly-discovered evidence, i.e., evidence that was not known at the time of trial.")

(citing <u>Teagle</u>, 336 F. App'x 209). Rather, as explained in more detail below, this

evidence was available to Petitioner's trial counsel, but was not presented during

trial. (Doc. 7, pp. 8, 56); (Doc. 12, pp. 16, 21-22) (Petitioner asserts that the

Pennsylvania Superior Court held that trial counsel "did not preserve the issue [of

character evidence] and, more on point, did not present character testimony at

all.").

     In regards to the reputation evidence that Petitioner contends was excluded

during trial, Petitioner has failed to establish that such evidence is "new" for

purposes of his <u>McQuiggin</u> claim. However, as stated by the Pennsylvania

Superior Court, "[t]he record does not demonstrate how the testimony of

[Petitioner's] proposed witnesses would relate a general consensus in the

community regarding [Petitioner's] general reputation for good moral character

and chastity with children." (Doc. 7, p. 56). The Superior Court went on to state that:

> [t]he proposed witnesses' testimony referred to only the absence of negative reports or criminal actions related to [Petitioner's] work with children, which in this context does not demonstrate [Petitioner's] good character.

(Id.).

Even if the reputation evidence at issue was considered "new," Petitioner has failed to establish that it is sufficiently probative of Petitioner's asserted innocence that it falls in the severely confined category of cases to which the miscarriage of justice exception applies. A McQuiggin claim can be successful only when "'a petition presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."'" Vidmosko, 2015 U.S. Dist. LEXIS 61771, at *10 (quoting McQuiggin, 133 S. Ct. at 1936). As noted above, exculpatory scientific evidence, trustworthy eyewitness accounts, and critical physical evidence have been identified as the types of evidence that can be sufficiently reliable to successfully advance a McQuiggin claim. See, e.g., Riley v. Myers, 2014 U.S. Dist. LEXIS 60639, at *23-24 (M.D. Pa. 2014) (Conaboy, J.) (citing Schlup, 513 U.S. at 324). But see Munchinski v. Wilson, 694

F.3d 308, 338 (3d Cir. 2012) (Schlup's three categories are not an exhaustive list of the types of evidence that can be 'reliable.'").  While the introduction of the reputation evidence at issue in a new trial may raise doubts as to Petitioner's guilt, it is determined that Petitioner has failed to establish that this evidence is not of the kind that would make it more likely than not that no reasonable juror would convict him.  See McQuiggin, 133 S. Ct. at 1928 (the standard is not met unless the petitioner "'persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'") (quoting Schlup, 513 U.S. at 329); see also Cox v. Beard, 2014 U.S. Dist. LEXIS 18118, at *26 (W.D. Pa. 2014) ("It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that.").

As to the potential eyewitness testimony from Petitioner's daughter and a "neighbor boy," these witnesses were not unavailable nor were they excluded from testifying at trial.[9]  (Doc. 12, pp. 21, 22) (conceding that, as a result of trial

---

[9] Although Petitioner concedes that the "neighbor boy" was not called as a witness during trial, see (Doc. 12, p. 22), this fact does not appear to be settled. Rather, the PCRA court's December 11, 2013, opinion calls that assertion into question.  (Doc. 7, pp. 72-74).  Specifically, the PCRA court states that the "neighbor boy" was "presented as a possible witness, but the Court ruled that he could not be called since he did not arrive until after the incident occurred."  (Id. at p. 73).  The PCRA court continued by stating that Petitioner's trial "counsel

counsel's decision, both witnesses were not called to testify during Petitioner's trial). Therefore, this evidence is not "new." Teagle, 336 F. App'x at 213 (noting that evidence was not "new," as it was available at trial and defense counsel chose not to present it); Myers, 2014 U.S. Dist. LEXIS 150151, at *17 (citing Teagle, 336 F. App'x at 213).

As a result of the foregoing, to the extent that Petitioner relies on the reputation and eyewitness evidence at issue to establish that equitable tolling is warranted under McQuiggin, he has failed to present reliable, newly-discovered evidence.

## ii. **Evidence Generated After Conviction and Sentence**

Petitioner also attempts to establish his McQuiggin claim with the results

---

concluded that [the neighbor boy's] statements were inconsistent, and would not have aided [Petitioner's] case." (Doc. 7, p. 73). The PCRA court went on to state that "[t]his Court stands by its ruling regarding the admissibility of [the neighbor boy's] testimony. The Court finds that the above-described decisions by trial counsel were rationally based and sound in his conclusions not to call the character witnesses or the two minor children." (Id.). As with the potential character witnesses, even if Petitioner had asserted that the "neighbor boy's" testimony should be considered "new" for purposes of his McQuiggin claim, and this Court agreed, Petitioner has failed to satisfy his burden that such testimony would be so probative of Petitioner's asserted innocence that it falls in the severely confined category of cases to which the miscarriage of justice exception applies. While McQuiggin claims can successfully rely on trustworthy eyewitness accounts, Petitioner has failed to establish that the "neighbor boy's" testimony has the requisite level of trustworthiness to establish that no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt.

from four (4) polygraph examinations, which were unavailable at the time of his trial. (Doc. 7, pp. 6, 8, 9, 15, 96-118); (Doc. 12, p. 9). According to Petitioner, these four (4) polygraph examinations found 1) his denial of the allegations truthful; 2) Petitioner to be a normal heterosexual without perverted desires; 3) his denial of sexual contact with minors to be truthful; 4) he does not "present a threat of sexual abuse;" and 5) his denials of improper contact with minors to be truthful. (Doc. 12, p. 9). But, to successfully advance a McQuiggin claim, the petitioner must not only present "new" evidence, they must also "show by a preponderance of the evidence, '"that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence". . . .'" Garcia, 2015 U.S. Dist. LEXIS 101514, at *3 (quoting Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010)).

In Pennsylvania:

> [t]he law regarding admission of polygraph tests has changed little in the years since such tests have been administered. Due to the well-known unreliability of the tests, our courts uniformly have been "reluctant to permit any reference to a polygraph examination to be made before the finder of fact."

Commonwealth v. Hetzel, 822 A.2d 747, 767 (Pa. Super. Ct. 2003) (quoting Commonwealth v. Miller, 439 A.2d 1167, 1170 (Pa. 1982)). "The current rule is that 'any reference to a [polygraph test] which raises an inference concerning the

guilt or innocence of a defendant is inadmissible.'" Hetzel, 822 A.2d at 767

(quoting Commonwealth v. Watkins, 750 A.2d 308, 315 (Pa. Super. Ct. 2000));

see Commonwealth v. Fortenbaugh, 620 Pa. 483, 490 (Pa. 2013) (finding that jury

instruction "unambiguously and correctly stated polygraph tests are not only

inadmissible at trial, but are so because they are unreliable, thus belittling them

and lessening the danger of the jury assigning any weight to the matter.").

Therefore, Petitioner's reliance on the results of the four (4) polygraph

examinations at issue in an attempt to meet the exception set forth in McQuiggin

implies that, if provided with the opportunity, he would move to admit this

evidence at a new trial to support his claim of innocence.  (Doc. 7, pp. 96-118);

(Doc. 12, p. 9).  But, in accordance with Pennsylvania case law, such a request

would be denied and thus, this "new" evidence would be deemed inadmissible at a

new trial.  Consequently, Petitioner's reliance on the results of four (4) polygraph

examinations fails to establish that equitable tolling is warranted under

McQuiggin.

  **c.**  **Equitable Tolling Due to State Court Error**

Lastly, as part of the portion of his brief dedicated to his claim of actual

innocence, Petitioner contends that he was prejudiced because his counsel failed to

ascertain whether he wanted to appeal the denial of his PCRA petition filed on

April 11, 2007.  (Doc. 12, pp. 23-28).  According to Petitioner, his trial counsel, Attorney Kalasnik, was obligated to "fully consult with [Petitioner] and to discover his wishes before the expiration of the deadline."  (Id. at p. 23).  Petitioner contends that he was "prejudiced because, but for his [counsel's] ineffectiveness, he would have appealed" the denial of his first PCRA petition.  (Id. at p. 27).  However, this argument fails to establish that equitable tolling should be applied in the circumstances sub judice under either Holland or McQuiggin.  Specifically, Petitioner has failed to show how or why the alleged error committed by Attorney Kalasnik during the litigation regarding Petitioner's first PCRA petition warrants the application of equitable tolling to the AEDPA's statute of limitations.

To the extent that Petitioner advances this argument in an attempt to establish that equitable tolling should be applied sub judice due to the underlying merits of his petition, his argument must fail.  "[U]nless germane to the reason for the untimely filing, the merits of habeas petition, however valid, cannot constitute an extraordinary circumstance that warrants equitable tolling."  Reiss v. Pa. Att'y. Gen., 2009 U.S. Dist. LEXIS 19060, at *28-29 (citing Marshall v. Sch. Dist. of City of Allentown, 657 F.2d 16, 20 (3d Cir. 1981); Brown v. Klem, 2006 U.S. Dist. LEXIS 4019 (E.D. Pa. 2006)).  Petitioner has failed to establish how the

alleged ineffective assistance of Attorney Kalasnik is germane to the reason for the

untimely filing of the instant petition. Specifically, Petitioner's judgment of

sentence became final on July 1, 2012. (Doc. 7, p. 80). Thus, Petitioner's June

28, 2013, PCRA petition is considered his first PCRA petition for timeliness

purposes. (Id. at p. 67). Petitioner was not represented by Attorney Kalasnik

during this PCRA litigation. (Id. at p. 14). On October 2, 2013, the June 28,

2013, PCRA petition was denied. Commonwealth v. Evans, CP-67-CR-5087-

2006. On October 31, 2013, Petitioner appealed that ruling to the Pennsylvania

Superior Court. Id. On July 1, 2014, the Superior Court affirmed the denial of

Petitioner's PCRA petition. Id. On July 31, 2014, Petitioner moved for allowance

of appeal to the Supreme Court of Pennsylvania. Id. On November 19, 2014,

Petitioner's allowance of appeal was denied. Id. Thus, according to Petitioner, he

had to file the instant petition within five (5) days of November 20, 2014. (Doc.

12, p. 14). Petitioner asserts that he failed to file the instant petition within the

applicable statute of limitations because of a legal error that was unrelated to

Attorney Kalasnik's representation. (Doc. 7, pp. 14-15); (Doc. 12, pp. 23-28).

Therefore, by Petitioner's own admission, the representation by Attorney Kalasnik

was not germane to the reason for the untimely filing of the instant petition.

Consequently, Petitioner's argument that equitable tolling is warranted due to the

alleged ineffective assistance of Attorney Kalasnik fails.

## III.    <u>CONCLUSION</u>

As a result of the foregoing, it is determined that Petitioner has failed meet his burden of demonstrating circumstances sufficient to warrant equitable tolling of the AEDPA's statute of limitations and thus, his petition is time barred. Respondent's motion to dismiss as untimely will be granted, and the amended petition will be dismissed as untimely.

A separate Order will be issued.

Date: August 31, 2015                    /s/ William J. Nealon
                                         **United States District Judge**